UNITED STATES FEDERAL COURT

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| vs. | )   NO. 05-CR-30016 MAP |
| | ) |
| VITO RESTO | ) |

MOTION TO STRIKE APPLICATION OF THE ARMED CAREER CRIMINAL ACT

Now comes the defendant and respectfully requests this Honorable Court rule the Armed Career Criminal Act (18 U.S.C. §924 (e)(1)) is not applicable to this case.

As ground for this request, pursuant to a joint request with the US attorney's office, the Court agreed to rule on the applicability of the A.C.C. before a trial date was set.

The specific issue requires a determination as to whether the defendant has three previous convictions for violent felony or serious drug offenses committed <u>on occasions different from one another</u>. The defendant's criminal history, (copy attached A), indicates convictions for armed robbery, trafficking a controlled substance, firearms violation, and possession of altered firearm; all cases were resolved by way of a plea of guilty on 4/16/96 and sentences ran concurrent with each other. This block of cases, the Government will allege, counts as two separate offenses (robbery and firearms violations being one offense and the trafficking controlled substance being the second offense). The defendant asserts the entire block of cases including robbery/firearms and drug trafficking counts as one offense.[1] Under the defendant's positions the prior criminal history reveals only two countable previous convictions which precludes application of the A.C.C..

---

[1] The defendant has another, but more obviously distinct conviction, for distribution of a controlled substance and was also sentenced in the 4/96; the Government would allege this would be the defendant's third qualifying conviction and the defense asserts this is the second countable conviction.

Respectfully submitted,

DEFENDANT

BY: *[signature]*
Mark G. Mastroianni, Esq.
95 State Street
Springfield, MA 01103
(413) 732-0222
BBO#556084

## CERTIFICATE OF SERVICE

I, Mark G. Mastroianni, Esq., do hereby certify that I have served a copy of the foregoing to United States Attorney Paul Smyth, 1550 Main Street, Room 310, Springfield, MA 01103 this 14 day of October, 2005.

*[signature]*

UNITED STATES FEDERAL COURT

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| vs. | )  NO. 05-CR-30016 MAP |
| | ) |
| VITO RESTO | ) |

MEMORANDUM IN SUPPORT OF STRIKING APPLICATION OF A.C.C.

**FACTUAL BACKGROUND**

In April 2005 the Grand Jury returned indictments against the defendant alleging three violations of 18 U.S.C. §922 (g)(1). Each of the three firearms indictments could carry an enhanced penalty under the Armed Career Criminal Act 18 U.S.C. §924(e)(1) of a minimum mandatory of fifteen years.

Application of the A.C.C. requires a finding that the defendant has three previous qualifying convictions committed <u>on occasions different from one another</u>. The U.S. Attorney and Defense counsel agreed to have the court make a ruling on the applicability of the A.C.C. before a trial is scheduled; resolution of this issue likely determine if the case would be a trial or resolved by plea.

The defendant's prior criminal history (attached A) indicates a series of Hampden County Superior Court indictments numbering 96-111 thru and including 96-114. Indictments allege armed robbery, trafficking controlled substance, firearm violation, and possession altered firearm. It is this group of cases which the U.S. Attorney's office counts as two previous convictions under the A.C.C.; Defense counsel takes the position this group of cases counts as one conviction under the A.C.C.. [2] The block of cases at issue all arose out of the defendant's

---

[2] The defendant has a separate/distinct conviction for distribution of a controlled substance, Hampden County Superior Court Docket 95-2276, which counts as his third conviction under the Government's position and counts as the second under the defendant's position

arrest on 1/3/96 by members of the Springfield Police Department. A Police Report provided by the U.S. Attorney's office, (attached B), indicates the defendant was involved in an armed robbery of an individual when money and a briefcase was taken from that person. In a very short time, perhaps minutes, the police located both defendant and co-defendant and recovered the items allegedly stolen and also recovered an amount of cocaine located in the room, where the defendant and co-defendant were arrested, the briefcase taken from victim was also recovered in the same room. All these cases were indicted together, processed together as part of the same group of indictments and ultimately resolved together by way of a plea of guilty with sentences coordinated to run concurrent with each other.

Defendant advises the court he is prepared to make a proffer of evidence regarding the factual background for the group of prior convictions at issue. Specifically, the defendant is prepared to call a witness or witnesses to establish the robbery was drug related and the narcotics recovered by police, which form the basis of the trafficking charge[3], were taken from the victim during the robbery.

## DISCUSSION

Beginning, as any interpretation of a statute must, the plain language must be examined to determine if it's meaning is clear on it's face. The statute in question, §924 (e)(1) clearly states that three previous convictions must be "committed on occasions different from one another" in order for each to qualify as a separate previous conviction which can be counted under that statute. "The language of the statute is a starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear" United States v. Choice, 201 F3rd 837, 840 (6th Cir. 2000) citing United States v. Ron Pair Enters., Inc. 489 U.S. 235, 241 (1989). This case before the court involves facts which allow for the application of the clear language of

---

[3] Defendant's position is that the A.C.C.A. should be stricken based on the plain language of the statute as applied to the plain fact of the crimes at issue being committed on the same occasion, however, defendant recognizes a full understanding of the factual background may be deemed appropriate and necessary by the court.

the statute, that is, all the offenses at issue here were committed on the same occasion and were treated that way throughout the prosecution and sentencing.

A body of case law has developed interpreting the "occasions different" portion of the statute which try to squeeze factual scenarios into a finding that would allow separate criminal acts to be treated as one. See United States v. Letterlough, 63 F3rd 332 (4th Cir. 1995) (Holding that two separate sales of cocaine, within 90 minutes of each other, but to the same police officer, constituted two A.C.C.A. occasions); United States v. Washington, 898 F2nd 439 (5th Cir. 1990) (Considering two robberies of same store clerk committed several hours apart for application of the separate occasion portion of the A.C.C.A.) United States v. Riddle, 47 F3rd 460 (1st Cir. 1995) (Consideration of application of A.C.C.A. regarding the commission of five different incidents on four different dates involving five different locations and victims), United States v. Stearns, 387 F3rd 104 (1st Cir. 2004) (Application of the A.C.C.A. to the commission of two burglaries at the same location with the second crime being committed one night after the commission of the first burglary).

Attempts at statutory construction are plentiful and often strained when a defendant is trying to show that, although there was an appreciable time lapse between crimes, those crimes may have involved either the same victim or been committed at the same location and therefore should be considered only as one conviction. The "occasions" inquiry has been said to require a case by case examination of the totality of circumstances when there was an attempt to consolidate separate events into a finding of the same occasion. Stearns *supra* 108, Riddle *supra* 462. It seems clear, however, the parsing and myriad of interpretations surrounding what amounts to different "occasions" is necessary only in cases where it is not obvious the offenses took place at the same time, such as in the Vito Resto set of circumstances.

It was noted in Stearns *supra* @ 108, if factual circumstances don't plainly fit into the clear wording of the A.C.C.A. statute there is a "crucial distinction between 1) a time interval during which defendant successfully has completed his first crime, safely escaped, and which affords defendant a breather, a period, however brief, which is devoid of criminal activity in which he may contemplate whether or not to commit the second crime and 2) a time lapse which

does not mark the end point of the first crime, but merely the natural consequence of a continuous course of extended criminal conduct. There really is no time lapse at all between the commissions of the offenses in the Vito Resto case as was present in Stearns *supra* and the cases it discussed.

Even in Riddle *supra*, where the court was considering five different incidents on four different dates involving five different locations and victims, while rejecting the idea of all the events being considered one conviction, the court referred to the statutory language of the A.C.C.A. as "elastic". Riddle *supra* @ 461. Although the court in Riddle rejected the notion of the five different incidents being counted as one, it was stated that, " there may be crime so closely related as to pose difficult issues under the statute".

The defendant asserts the plain and clear reading of the statute controls the Vito Resto situation, leading to a finding the offenses at issue constitute one conviction committed on the same occasion. The plain reading urged by the defendant is supported by the cautionary note in United States v. Graves, 60 F3rd 1183, 1187 (6th Cir. 1995)("It should not be necessary to reach to apply this statute; instead the statute should be applied with the facts demand it's application"). As discussed in United States v. Thomas, 211 F3rd 316, 320 (6th Cir. 2000) "There must be some reasoned basis for considering criminal conduct to be a definable event". The reasoning in the Thomas court hinged on finding that the purpose of the A.C.C.A. was to target recidivism; "because Congress intended to punish recidivists, the predicate conduct must amount to separate and distinct transactions in some definable sense".

The recidivism point made by the court in Thomas was well articulated in United States v. Towne, 870 F2nd 880, 889-890 (2nd Cir. 1989) The Towne decision was written before the amendment to the A.C.C.A. adding the "different occasions" language, however, the history and intent of Congress in adding that language is apparent from the courts review of the legislative history. The court in Towne found of the A.C.C.A. statute that Congress "had intended it's sentencing enhancement provision to only apply to recidivists and repeat offenders and not to persons who commit several crimes at one time". The Towne court reviewed the history of United States v. Petty, 798 F2nd 1157 (8th Cir. 1986) as well as the legislative history and legal

arguments made when the Petty case was granted certiorari. The Towne court also considers the briefs of the solicitor general submitted on the issue, as well as the Armed Career Criminal Act hearings in both the House and Senate. In it's conclusion, Towne *supra* @ 890, states "it seems quite clear that this section of the act was intended to target recidivist, i.e., those which have engaged in violent criminal activity on at least three separate occasions, and not individuals who happened to acquire three convictions as a result of a single criminal episode. The Towne opinion seems entirely on point and it's review of the legislative intent was shown to be accurate by the insertion of the "committed on occasion different from one another" language to the A.C.C.A. @18 U.S.C.S. §924 (e)(1) in November 1988.[4]

Reference to the historical intent behind the A.C.C.A. and it's applying to recidivists enforces the position of Vito Resto because the block of criminal cases at issue does not show him to be a repeat offender but only as a person who committed several crimes one time as discussed in Towne *supra*. In this case, as noted in Thomas *supra* @ 320, there is an absence of a definable end point of what may have been the first crime before what could be characterized as a second crime was begun. It is the inability to find a definable end point which makes it clear that a series of convictions must be counted as one event under the A.C.C.A.. Of some significance is the defendant's proffer of evidence to show the drugs located in the room were part of items taken from the victim in the robbery of money and a brief case. The intention of the defendant being to rob an individual of items, primarily narcotics, shows there is no time interval between

---

[4] The relevance of the Towne examination of the A.C.C.A. is described in the ALR Treatise @ 123 ALR Fed 397, 409 n.3.:"Congress in adding the phrase committed on occasions different from one another" on November 18, 1988 intended only to clarify the predicate offense requirements for enhanced sentence under 18 U.S.C.S. §924 (e)(1) See Anti-Drug Abuse Act of 1988, Pub. L NO. 100-690 §7056, 102 Stat. 4181, 4402 (1988). Courts faced with determining what constitutes three previous convictions for offenses committed on occasions different form one another for the purpose of sentence enhancement under 18 U.S.C.S. §924 (e)(1) have continued to apply the same legal standard generally applied under the Armed Career Criminal Act prior to the November 18, 1988 amendment and have relied upon cases interpreting the act prior to the amendment to ascertain the status of criminal convictions as potential predicate offenses for the purpose of sentence enhancement under the current version of 18 U.S.C.S. §924 (e)(1)".

the crimes, there was a continuity relative to the defendant's conduct and continuity of apparent motive for the crimes. See considerations listed in Stearns *supra* @ 108.

It is important for the court to consider all facts available when determining the true nature and circumstances of the group of previous convictions at issue. The defendant asserts the entire incident was a drug related robbery of an individual due to narcotics and for the purpose of getting narcotics. The importance of the court gathering a full understanding of the factual background was underscored by the finding in Stearns *supra* @ 106 as the court noted the trial courts denial of the defendant's request for an evidentiary hearing for establishing the factual issues, on the "occasion" issue, was based only on the defendant's waiving any request for a fact establishing hearing. The tone of the Stearns court seem to be consistent with the allowing some sort of procedure to take place to determine the true facts of any given situation. See also Thomas *supra* @ 317 n.3 (when making a determination under the application of the A.C.C.A. "we can not imagine how such a determination could be made without reference to the underlying facts of the predicate offenses").

Any reading of the statute against the defendant's position, the defendant asserts, would violate the clear and plain meaning of the statute itself. If there is any ambiguity in the statute it must be resolved in favor of the more lenient punishment. The well established judicial doctrine of the "rule of lenity" stands for the idea that if a statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the rule of lenity is applied in favor of a criminal defendant. United States v. Hill, 55 F3rd 1197, 1206 (6th Cir. 1995) See also United States v. Bass 404 U.S. 336, 347-348 (1971). "Accordingly, the policy of lenity means that the court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended" Bifulco v United States, 447 U.S. 381, 387 (1980), as quoted in the concurring opinion of Thomas *supra* @ 321. The defendant also asserts any ambiguity in the statute would lead to a finding the statute should be void for vagueness. The void for vagueness doctrine requires a criminal statute be defined with sufficient definiteness so that ordinary people could understand". Kolender v. Lawson, 461 U.S. 352, 357 (1983)

Finally the defendant argues he does not waive any constitutional challenges to these underlying convictions. Specifically the conviction of trafficking of cocaine seems hardly to be supported by the evidence where the Government could not establish defendant's possessory interests to prosecute him for a crime which must begin with possession. The defendant was found in a room at a home that was not his. There is absolutely no evidence to establish the defendant had any possessory interest in the drug items. The defendant's accepting a plea of guilty at the time raises due process issues regarding his plea to a crime where there was not a sufficient factual basis to support the court accepting a plea as well as raising questions about the adequacy of defendant's representation. This issue regarding the constitutionality of the defendant's prior plea is reserved for more detailed argument, if necessary, after the courts ruling on this Motion to Strike Application of the A.C.C.A..

DEFENDANT

BY: _____

Mark G. Mastroianni, Esq.
95 State Street - Suite #309
Springfield, MA 01103
(413) 732-0222
BBO #556084

CERTIFICATE OF SERVICE

I, Mark G. Mastroianni, Esq., do hereby certify that I have served a copy of the foregoing to United States Attorney Paul Smyth, 1550 Main Street, Room 310, Springfield, MA 01103 this _14_ day of October, 2005.

_____
Mark G. Mastroianni

-7-

```
PRIM NAME: RESTO, VITO                           DOB: 06/30/1978 PCF#:1771892

SEX: M  SS #: 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 MOTHER: MARIA
                          FATHER: VICTOR
HOME ADDR :2994 MAIN ST , HARTFORD CONNECTICUT        POB: HARTFORD CO
ZIP CODE  :              -

ETHNICITY: HISPANIC      HGT: 602  WGT: 190  HAIR: BLACK        EYES: BROWN

ALIAS NAME(S): ORTIZ, JASON              DOB: 06/30/1978
               TORRES, VICTOR                 06/30/1978
               LASADA, JASON                  06/30/1978


DT: 03/18/2004 SPR CRT:   HAMPDEN SUPERIOR( 79)        DKT#        04255 1
OFFENSE: ACCESSORY BEFORE(ACC BEF)                     A&B DW/FIREARM
DISPOSITION: C                                              STATUS: OPEN


DT: 03/18/2004 SPR CRT:   HAMPDEN SUPERIOR( 79)        DKT#        04255 2
OFFENSE: A&B DANGEROUS WEAPON(A&B DW)                  FIREARM
DISPOSITION: C                                              STATUS: OPEN


DT: 03/18/2004 SPR CRT:   HAMPDEN SUPERIOR( 79)        DKT#        04255 3
OFFENSE: POSS OF FIREARM(FIR POSS)                     UNLAWFUL
DISPOSITION: C                                              STATUS: OPEN


DT: 03/18/2004 SPR CRT:   HAMPDEN SUPERIOR( 79)        DKT#        04255 4
OFFENSE: POSS FIREARM W/O PERMIT(FIR POSS WO PERM)     OR AMMO WO ID CARD
DISPOSITION: C                                              STATUS: OPEN


DT: 01/14/2004 SPR CRT:   SPRINGFIELD DISTRICT( 23)    DKT#   0423CR0362A
OFFENSE: POSS FIREARM W/O PERMIT(FIR POSS WO PERM)
DISPOSITION: C 3/23/04 DISM INDICT                          STATUS: CLOSED


DT: 01/14/2004 SPR CRT:   SPRINGFIELD DISTRICT( 23)    DKT#   0423CR0362B
OFFENSE: POSS FIREARM W/O PERMIT(FIR POSS WO PERM)
DISPOSITION: C 3/23/04 DISM INDICT                          STATUS: CLOSED


DT: 01/14/2004 SPR CRT:   SPRINGFIELD DISTRICT( 23)    DKT#   0423CR0362C
OFFENSE: DISCHARGING A FIREARM(FIR DISCH)              WITHIN 500 FT OF BLD
DISPOSITION: C 3/23/04 DISM INDICT                          STATUS: CLOSED


DT: 01/14/2004 SPR CRT:   SPRINGFIELD DISTRICT( 23)    DKT#   0423CR0362D
OFFENSE: ASSAULT TO MURDER(ASLT MURD)                  ARMED
DISPOSITION: C 3/23/04 DISM INDICT                          STATUS: CLOSED


DT: 01/14/2004 SPR CRT:   SPRINGFIELD DISTRICT( 23)    DKT#   0423CR0362E
OFFENSE: A&B DANGEROUS WEAPON(A&B DW)                  A HANDGUN
DISPOSITION: C 3/23/04 DISM INDICT                          STATUS: CLOSED
```

EXHIBIT A

PRIM NAME: RESTO, VITO                DOB: 06/30/1978 PCF#:1771892         *

DT: 06/06/2003 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        03392 1
OFFENSE: POSS OF FIREARM(FIR POSS)                            UNLAWFUL/SUB. OFF
DISPOSITION: 2/12/04 NG                                       STATUS: CLOSED

DT: 06/06/2003 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        03392 2
OFFENSE: POSS FIREARM W/O PERMIT(FIR POSS WO PERM)            OR AMMO WO IDCARD
DISPOSITION: 2/12/04 NG                                       STATUS: CLOSED

DT: 06/06/2003 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        03392 3
OFFENSE: RESISTING ARREST(RESIST ARST)
DISPOSITION: 2/12/04 NG                                       STATUS: CLOSED

DT: 04/04/2003 SPR CRT:    SPRINGFIELD DISTRICT( 23)          DKT#   0323CR2996A
OFFENSE: POSS FIREARM W/O PERMIT(FIR POSS WO PERM)
DISPOSITION: C 6/6/03 DISM INDICT                             STATUS: CLOSED

DT: 04/04/2003 SPR CRT:    SPRINGFIELD DISTRICT( 23)          DKT#   0323CR2996B
OFFENSE: POSS OF FIREARM(FIR POSS)                            WO FID CARD
DISPOSITION: C 6/6/03 DISM INDICT                             STATUS: CLOSED

DT: 04/04/2003 SPR CRT:    SPRINGFIELD DISTRICT( 23)          DKT#   0323CR2996C
OFFENSE: RESISTING ARREST(RESIST ARST)
DISPOSITION: C 6/6/03 DISM INDICT                             STATUS: CLOSED

DT: 04/04/2003 SPR CRT:    SPRINGFIELD DISTRICT( 23)          DKT#   0323CR2996D
OFFENSE: CARRYING DANGEROUS WEAPON(DWC)                       HANDGUN
DISPOSITION: C 6/6/03 DISM INDICT                             STATUS: CLOSED

DT: 01/26/1996 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        96111
OFFENSE: ARMED ROBBERY(ROB ARM)                               M/D
DISPOSITION: 4/16/96 5-7YRS CMTD                              STATUS: CLOSED

DT: 01/26/1996 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        96112
OFFENSE: TRAFFICKING CONT SUB(CSA TRAFF)                      COCAINE
DISPOSITION: 4/16/96 3-5YRS CMTD                              STATUS: CLOSED

DT: 01/26/1996 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        96113
OFFENSE: FIREARM VIOLATION(SPECIFY)(FIR)                      CARRY
DISPOSITION: 4/16/96 3-5YRS CMTD                              STATUS: CLOSED

DT: 01/26/1996 SPR CRT:    HAMPDEN SUPERIOR( 79)              DKT#        96114
OFFENSE: POSS ALTERED FIREARM(FIR POSS ALT)
DISPOSITION: 4/16/96 3-5YRS CMTD                              STATUS: CLOSED

DT: 01/04/1996 SPR CRT:    SPRINGFIELD DISTRICT( 23)          DKT#   9623CR0114A
OFFENSE: ROBBERY(ROB)                                         ARMED & MASKED
DISPOSITION: C 1/31/96 DISM INDICT                            STATUS: CLOSED

PRIM NAME: RESTO, VITO                              DOB: 06/30/1978 PCF#:1771892         *

```
DT: 01/04/1996 SPR CRT:    SPRINGFIELD DISTRICT( 23)        DKT#   9623CR0114B
OFFENSE: FIREARM VIOLATION(SPECIFY)(FIR)                    CARRY WO LIC
DISPOSITION: C 1/31/96 DISM INDICT                                STATUS: CLOSED


DT: 01/04/1996 SPR CRT:    SPRINGFIELD DISTRICT( 23)        DKT#   9623CR0114C
OFFENSE: GUN SERIAL NUMBER(FIR GN NUM)                      OBLITERATED
DISPOSITION: C 1/31/96 DISM INDICT                                STATUS: CLOSED


DT: 01/04/1996 SPR CRT:    SPRINGFIELD DISTRICT( 23)        DKT#   9623CR0114D
OFFENSE: POSS OF AMMUNITION(POSS AMMO)                      W/O ID
DISPOSITION: C 1/31/96 DISM INDICT                                STATUS: CLOSED


DT: 01/04/1996 SPR CRT:    SPRINGFIELD DISTRICT( 23)        DKT#   9623CR0114E
OFFENSE: TRAFFICKING CONT SUB(CSA TRAFF)                    28-100 GRMS COCAINE
DISPOSITION: C 1/31/96 DISM INDICT                                STATUS: CLOSED


DT: 10/12/1995 SPR CRT:    HAMPDEN SUPERIOR( 79)            DKT#        952276
OFFENSE: DISTRIBUTING CONT SUB(CSA DIST)                    COCAINE
DISPOSITION: WAR 10/26/95 WAR REC 4/12/96 1-3YRS CMTD             STATUS: CLOSED
```

**SPRINGFIELD POLICE DEPARTMENT**
**CRIMINAL REPORT FORM**

EXHIBIT 1

MONTH 01 DAY 03 YEAR 96

TYPE OF REPORT, SPECIFY: ARREST (I.E. ARREST, OPEN DOOR, B & E, ET)

1 OF 6

**DETAIL REPORT**

Sir,

At about 19:10 Th[is date] Ofc. Williams, Ofc. Finn, Ofc. Donoghue, and I arre[sted] (1) Claudio, Raymond of 18 Newland St, D.O.B. 12-29-75, [SSN] ?-57-1319, (2) Rusto, Vito of 101 Lowell St, D.O.B. 06-30-7[?], [SSN] 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, (3) Robo[n] Madelyn, D.O.B. 06-21-79, 021-60-818[?], 66 Orchard St. for (1) Armed Robbery w/ Mask[s] (2) Poss. F/A w/o MA Permit (3) Poss. F/A Obliterated Ser #, Poss Ammo w/o F.I.D., and Rusto and Claudio also chrg[ed] w/ Traf. Class "B" Sub. Crack 30 grams. At 18 Newland [St...]

POST NO.
CAR NO. 43
DISTRICT NO. 1A

REPORTED FOR D[UTY] 2:45 PM
REPORTED OFF D[UTY] 10:45 PM

REPORTING OFFICER
Bryan Trombley 70575

---

**SPRINGFIELD POLICE DEPARTMENT**
**CRIMINAL REPORT FORM**

2 OF 6

MONTH 01 DAY 03 YEAR 96

TYPE OF REPORT, SPECIFY: ARREST (I.E. ARREST, OPEN DOOR, B & E, ET)

**DETAIL REPORT**

At about 19:10 Ofc. [Willi]ams and I were dispatched [to] 430 Plainfield St. for an [armed] Robbery (Gonzalez Variety Store). The victim Jose E. Gon[zalez] stated that about 19:00 he was closing up and leaving [the] intersection [of] Sanderson and Plainfield a w[hite] Camaro slid[e] in front of him blocking his path. At this ti[me] two Hispanic males ran to the driver's side door [from the] sidewalk. The taller o[ne] two opened the door [and] pointed a small silver pistol at him and stated "Give me [the] money" [the] He notice this subject wearing a dark colored s[hirt?]. The victim gave him cash app. $750-$800, food stamps, w/l[ottery] tickets,

POST NO.
CAR NO. 43
DISTRICT NO. 1A

REPORTED FOR [DUTY] 2:45 PM
REPORTED OFF [DUTY] 10:45 PM

REPORTING OFFICER
Bryan Trombley 70575

## SPRINGFIELD POLICE DEPARTMENT
### GENERAL REPORT FORM

**01 / 03 / 96**
MONTH / DAY / YEAR

3 OF 6

TYPE OF REPORT, SPECIFY: Arr(est)
(I.E. ARREST, OPEN DOOR)

DE... OF REPORT

STORE RECIPIENTS. AT ... ...NT THE SECOND SUBJECT A SHORTER
STOCKIER MALE STATED "G... ...IS ALL YOU GOT!" VICTIM NOTICED
HE HAD A BIGGER BLACK ... ...TOO AND WAS ALSO WEARING A SKI
MASK. THE SECOND SUBJECT ... ...ED A BLACK BOOKBAG FROM THE BACK
SEAT, BOTH SUBJECTS FLED ... FOOT DOWN PLAINFIELD. VICTIM THEN
TO FOLLOW, BOTH SUBJECTS ... RAN DOWN CLAYTON ST. VICTIM
ATTEMPTED TO FOLLOW AT ... TIME HE NOTICED THE WHITE
CORNER ON CLAYTON ST. HE ... ...ED THE PLATE WAS MA 706-SWR.
AND ALSO THAT IT WAS A ... SPANISH WOMEN DRIVING. AT THIS
TIME THE VICTIM WENT ... ...ED TO 40 THIS STREET AND CALLED
THE POLICE. OFC. L. WILLIAMS ... RESPONDED TO 18 NEWLAND ST.

POST NO.
CAR NO. 43
DISTRICT NO. 1A

...TY 2:45 PM
...TY 10:45 PM  BRYAN TROMBLY 72275
REPORTING OFFICER

...DS COPY

---

## SPRINGFIELD POLICE DEPARTMENT
### GENERAL REPORT FORM

**01 / 03 / 96**
MONTH / DAY / YEAR

4 OF 6

TYPE OF REPORT, SPECIFY: Arr(est)
(I.E. ARREST, OPEN DOOR)

DE... OF REPORT

THE ADDRESS THE R... ...CAME BACK TO. ABOUT 19:15 WE
OBSERVED THE M/V AT 1... ...LAND ST UNOCCUPIED. OFC. L. WILLIAMS
KNOCKED ON THE FRONT DO... ...WAS MET BY CLAUDIO, ISABEL
SHE STATED THE CAR BELON... ...HER. HE ASKED HER WHO WAS
DOWN TO THE CAR AND WAS ... ...D MADELYN, MY SON RAYMOND
CLAUDIO, AND HIS FRIEND VI... ...HE OFFERED TO SHOW OFC. WILLIAMS
AND I WHERE THEY WERE ... THE THIRD FLOOR. AT THIS POINT WE
HEARD RUNNING UP STAIRS. ...CEEDED UPSTAIRS TO THE THIRD
FLOOR WHERE WE FOUND ... ..., VITO. AT THIS POINT I OBSERVED
A BLUED COLT 45 ACP IN ... VIEW. (TAG #157974) OFC. DONOGHUE

POST NO.
CAR NO. 43
DISTRICT NO. 1A

...Y 2:45 PM
... 10:45 PM   BRYAN TROMBLY
REPORTING OFFICER

## [SPR]INGFIELD POLICE DEPARTMENT
### GENERAL REPORT FORM

**01 / 03 / 96**
MONTH / DAY / YEAR

5 OF 6

TYPE OF REPORT, SPECIFY: ARREST
(I.E. A[RREST], DOOR, B & E, ETC.)

### DETAILS OF REPORT

Recovered a [...] other side of the [...] a black briefcase bed (TAG# 157972) eye holes (TAG# 15[...] at the foot of the sex jacket (TAG #[...] Finn recovered a [...] the other jacket, [...] crack cocaine [...] OFC. D. Williams)

[...]ings, .380 silver in color, from the (TAG# 157969) OFC. Donoghue also recovered [...]ing to Mr. Gonzalez at the foot of the [...] Donoghue also recovered a knit hat with [...] and a knit hat, blue w/ eye holes (TAG# 157971 OFC. Finn recovered a blue and red red [...] in the middle of the bed in plain view, OFC [...]eather jacket (TAG# 157980) laying next to [...] Williams recovered app. 30 bags of [...] the T.V. (Field test made on scene by

POST NO.
CAR NO. 43
DISTRICT NO. 1A

[RE]PORTED FOR DUTY  2:45 PM
[RE]PORTED OFF DUTY  10:45 PM

By Bryan [signature] 720-3007-7[...]
REPORTING OFFICER

RECORDS COPY

---

## [SPR]INGFIELD POLICE DEPARTMENT
### GENERAL REPORT FORM

**01 / 03 / 96**
MONTH / DAY / YEAR

6 OF 6

TYPE OF REPORT, SPECIFY: ARREST
(I.E. A[RREST], DOOR, B & E, ETC.)

### DETAILS OF REPORT

25 pieces of [...] with several [...] transported to 1B [...] I.D. clothing, [...] all subjects we[re] 130 Pearl St. B[...] recovered $300 ([...] from Claudio. Also [...] next to the [...] Capt. Dillon N[...]

[...] were individually wrapped for sale, along [...]gs of crack, (TAG# 157975) victim was [...] land St. by the D.B. were victim [...] and his briefcase, as well as the weapons [...]aced in custody and transported to [...]t # 96145 made. OFC. Williams also [...]505) from Vito and $410 (TAG# 158506) [...] was $95 (157973) By OFC. Donoghue

POST NO.
CAR NO. 43
DISTRICT NO. 1A

[RE]PORTED FOR DUTY  2:45 PM
[RE]PORTED OFF DUTY  [...]

Respectfully S[ubmitted]
By [signature]
REPORTING OFFICER